# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| HARRIETTE B. McPHERSON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06 C 1221 |
| | ) | |
| CITY OF CHICAGO, | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

City of Chicago hand laborers perform manual labor, including loading tools into work vans, collecting garbage, cleaning streets, shoveling snow, and cutting weeds and trees. Plaintiff Harriette McPherson, a hand laborer, sued the City of Chicago under Title VII, contending that the City: (1) is liable for undisputed sexual harassment by her former crew chief, Thomas Sadzak (Count I); (2) retaliated against her after she complained about Sadzak's sexual advances (Count II); and (3) negligently supervised and retained Sadzak and thus created a situation where the harassment could continue for five years (Count III).

The parties filed cross motions for summary judgment on Count I, the City moved for summary judgment on Counts II and III, and McPherson filed a motion to strike certain affidavits attached to the City's motion. For the following reasons, McPherson's motion to strike and the cross motions for summary judgment on Count I are denied, and the City's motion for summary judgment on Counts II and III is granted.

## I.   McPherson's Motion to Strike

McPherson seeks to strike affidavits submitted by the City (specifically, affidavits from Joseph Rodish, Joseph Chojnowski, John Drosos, and Mickey Grasz), contending that: (1) they

improperly contradict prior deposition testimony; (2) the City failed to produce them in discovery; and (3) they are self-serving.

### A. Do the Affidavits Improperly Contradict Deposition Testimony?

A deponent may not use an affidavit to change her prior deposition testimony. *Miller v. A.H. Robins Co.*, 766 F.2d 1102, 1104-05 (7th Cir. 1985). She may, however, submit an affidavit if it explains her prior deposition testimony or relates to newly-discovered evidence. *Miller*, 766 F.2d at 1104. Here, McPherson asserts that portions of the City's affidavits are inadmissible because they contradict prior deposition testimony.

First, she contends that certain affidavits are inconsistent with other witnesses' deposition testimony. The only relevant contradictions, however, are between an affidavit and the deposition of the same affiant. *Id.* at 1104-05. Thus, the alleged inconsistencies between the affidavits from certain witnesses and deposition testimony from different witnesses do not require the court to strike the affidavits.

Second, McPherson asserts that Chojnowski and Drosos' affidavits are improper attempts to change their own prior deposition testimony. The court has confined its review to the alleged inconsistencies identified by McPherson. *See* Docket No. 58. The cited portions of the deposition testimony, while not word-for-word recitations of the subsequent affidavits, are generally consistent. Moreover, McPherson's parsing of the deposition and affidavit testimony is not the only possible way – and often not a natural way – to read these documents. Finally, the court will not blindly accept lay witnesses' testimony on dispositive legal issues. Thus, the motion to strike based on alleged inconsistencies is denied.

B.     The City's Obligation to Produce the Affidavits

McPherson next contends that the City's obligation to supplement its discovery responses meant that it was required to provide her with affidavits used in support of its summary judgment filings (specifically, affidavits from Joseph Rodish, Joseph Chojnowski, John Drosos, and Mickey Grasz). A party must "seasonably amend" its prior discovery responses "if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(2). This rule prevents unfair surprise by ensuring that the other side receives adequate notice of new information. *See Westefer v. Snyder,* 422 F.3d 570, 584 (7th Cir. 2005); *Gutierrez v. AT & T Broadband, LLC,* 382 F.3d 725, 732-34 (7th Cir. 2004). Where information has "otherwise been made known" during the course of discovery, however, there is no duty to supplement because the other party has received adequate notice. *See* Fed. R. Civ. P. 26(e)(2) Advisory Committee's Note.

The parties dispute whether McPherson knew about the four witnesses who prepared affidavits for the City. The City correctly points out that all four witnesses were identified in discovery and McPherson deposed Chojnowski, Drosos, and Grasz. In addition, as discussed above, the affidavits of these three witnesses are consistent with the affiants' depositions. Because McPherson deposed these witnesses, she cannot claim that affidavits from them unfairly surprised her. *See RIV VIL, Inc. v. Tucker*, 979 F.Supp. 645, 661 (N.D. Ill. 1997) (declining to strike declaration submitted in support of a motion for summary judgment when it was consistent with positions taken by the moving party earlier in case and was based on data that had been disclosed in discovery).

With respect to Rodish, the City asserts that McPherson is responsible for her decision not to depose him. In support, it notes that McPherson's own supplemental Rule 26(a) disclosures identified Rodish as an individual "likely to have discoverable information" and McPherson herself testified at her deposition that Rodish had knowledge relevant to her harassment claim. Because McPherson knew that Rodish possessed relevant information and could have deposed him had she desired to do so, the court declines to strike Rodish's affidavit. *See Gutierrez v. AT&T Broadband, LLC,* 382 F.3d 725, 733 (7th Cir. 2004) (where plaintiff knew of the affiant and knew that he possessed relevant information, the information contained in the affidavit the plaintiff sought to strike was "otherwise made known" to the plaintiff).

### C. The Self-Serving Nature of the Affidavits

McPherson argues that the City's affidavits do not clarify the record, but instead are improperly self-serving. Generally, much if not all testimony introduced by a party via affidavit is self-serving, so a rule requiring the court to strike all self-serving testimony would require it to jettison virtually all affidavits. The Seventh Circuit has thus held that an affidavit can be self-serving if it does not contradict earlier deposition testimony and is otherwise admissible. *See Rogers v. City of Chicago,* 320 F.3d 748, 751 (7th Cir. 2003); *see also Paz v. Wauconda Healthcare & Rehabilitation Centre, LLC,* 464 F.3d 659, 664-65 (7th Cir. 2006). The court has already found that the affidavits do not contradict prior deposition testimony and McPherson does not contend that the affidavits are otherwise admissible. Thus, this argument is unconvincing. For all of these reasons, McPherson's motion to strike is denied.

## II. Background

### A. Local Rule 56

McPherson filed a motion seeking leave to exceed the 80-paragraph limit in Rule 56. McPherson requested extra paragraphs due to the large number of deponents and her desire to keep each paragraph short. The motion is granted.

The court also notes that it ordered the parties to submit a joint statement of facts in connection with their cross-motions for summary judgment, with separate supplemental statements of additional facts as necessary. The parties failed to comply with this order. Counsel for the City reports that McPherson's counsel failed to respond to its draft, so it simply submitted its own statement, as did McPherson. This is unacceptable. If counsel experiences difficulties, they should bring the situation to the court's attention, as opposed to forging their own path. Both sides have come perilously close to having their statements stricken. The court will not require rebriefing but admonishes counsel to strictly comply with briefing orders in the future.

This brings the court to McPherson's Rule 56 submissions. The local rules require the party moving for summary judgment to submit a statement of material facts consisting of short numbered paragraphs accompanied by citations to admissible evidence. Loc. R. 56.1(a). The opposing party must respond to each paragraph by either admitting or denying the allegations, and must specifically cite to the supporting evidence. Loc. R. 56.1(b)(3)(A).

Many of the paragraphs in McPherson's statement of facts do not contain appropriate citations to the record. Failure to comply with the local rules governing the form of summary judgment motions is not a "harmless technicality." *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 924 (7th Cir. 1994). Moreover, the Seventh Circuit has unequivocally held that Rule 56

statements that fail to include "specific references to the affidavits, parts of the record, and other supporting materials relied upon" may be stricken at the court's discretion. *See, e.g., Brasic v. Heinemann's Inc.,* 121 F.3d 281, 284 (7th Cir. 1997); *see also Ciomber v. Cooperative Plus, Inc.*, — F.3d —, No. 06-3807, 2008 WL 2185848, at *6 (7th Cir. May 28, 2008) ("District courts are entitled to expect strict compliance with Rule 56.1") (internal quotations omitted).

In its discretion, the court declines to strike the unsupported portions of McPherson's Rule 56 statement. It nevertheless notes that it is not required to scour the record to unearth evidentiary support for her position. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004). In the interests of justice, the court examined McPherson's statement of facts and attempted to match the relevant evidence up with her submission. This task properly belongs to McPherson, whose failure to comply with the longstanding local rules governing summary judgment motions means that she has forfeited any ability to express dissatisfaction with the court's efforts to reach the merits despite the problems with her Rule 56 submissions. With this understanding, the following facts are derived from the parties' Local Rule 56.1 statements and are undisputed unless otherwise noted.

**B.     Facts**

    **1.     The Parties and Chain of Command**

Thomas Sadzak worked as a laborer for the City of Chicago beginning in May of 1997. Sadzak generally reported to Mickey Grasz, Larry Torrez or Frank Zurawski, who were higher level laborers assigned to observe and report on the conduct of lower level laborers. Joseph Chojnowski, the Program Director of the Neighborhood Enhancement Program, was responsible for overseeing laborers and hand laborers. Grasz, Torrez, and Zurawski reported directly to Joseph Chojnowski and at times, Sadzak also reported directly to Chojnowski.

In March of 2000, the City hired Harriette McPherson to work as a hand laborer in the 10th Ward. McPherson, like other hand laborers, was responsible for tasks such as loading up the work van with tools, collecting garbage, cleaning streets, shoveling snow, and cutting weeds and trees. McPherson reported to Sadzak from June, 2000, until January, 2005, with the exception of days that she or Sadzak were absent. Sadzak earned more then McPherson. In turn, Grasz, Torrez, and Zurawski earned more than Sadzak.

John Drosos was the 10th Ward superintendent from September of 1999 to the present. The position of superintendent is a higher-paying position than refuse collection coordinator, laborer, and hand laborer. Joseph Rodish was the 10th Ward acting refuse coordinator from September of 2003 to January of 2007.

### 2. The City's Sexual Harassment Policy

After being hired by the City and prior to beginning work in March of 2000, McPherson attended an orientation. During the orientation, McPherson was told that the City's violence in the workplace policy required her to report any violence in the workplace to a supervisor. At this time, McPherson also received a copy of the City's personnel rules. Section 1 of Rule XVIII lists various reasons for disciplinary action, including discrimination based on gender and sexual harassment. The rules also state that a supervisor who is aware of sexually harassing conduct must report it, whether or not anyone complains about such conduct. In addition, the rules provide that threatening verbal communications are considered violence in the workplace and require employees and supervisors to report such violence.

### 3. Sadzak's Harassment of McPherson

It is undisputed that beginning in June of 2000, Sadzak made sexual remarks about McPherson's body, including her breasts, in the presence of hand laborer Nina Booker. He also

asked McPherson to let him touch her breasts in the presence of hand laborer Kenya Woods, passed McPherson notes entitled "To-Do List" which contained lewd drawings, and made obscene comments to McPherson. In addition, Booker and Woods saw Sadzak pull down his pants in front of McPherson on at least one occasion. On days when McPherson was not at work, Sadzak drove past McPherson's home or repeatedly called her home phone.

### 4. Sadzak's Authority

The parties agree that after receiving instructions from Chojnowski about which routes to clean, Sadzak followed a route book which contained information about the streets the superintendents wanted cleaned. Sadzak determined which hand laborers would work on a particular route and when a particular route was complete. Sadzak drove the hand laborers to the locations where they were assigned to work, gave the hand laborers their daily jobs, and told them which tools to load into the van.

It is also undisputed that Sadzak signed and dated premise sheets and work activity sheets, which were then forwarded to Chojnowski. He signed these sheets on the line labeled "Supervisor." Sadzak frequently used a desk in Drosos' office to fill out his paperwork. Hand laborers reporting to Sadzak were required to call him to report absences. Sadzak recorded these absences and reported rule violations to Chojnowski, who decided what disciplinary steps were appropriate. The determination as to whether an absence was excused or unexcused affected employees' wages and directly influenced disciplinary action.

The parties, however, disagree as to the scope of Sadzak's authority to transfer hand laborers. According to McPherson, Sadzak was authorized to fire or transfer hand laborers working under him. In support, McPherson points to a dispute between Sadzak and Booker about music. Booker testified that after this incident, Sadzak took her to Chojnowski's office

and asked to have her transferred, which Chojnowski promptly did. The City, however, offers Chojnowski's view of Booker's transfer: according to Chojnowski, he transferred Booker after she asked to be reassigned and Sadzak played no role in the transfer.

In addition, McPherson and Booker both testified that Sadzak told them that he could get McPherson transferred. Similarly, McPherson, Booker, and Woods testified that Sadzak told them that if they complained about sexual harassment, he might rape them or have them fired.

Chojnowski also concedes that in January of 2005, he met with Sadzak, who asked him to reassign McPherson to the 33rd Ward because Sadzak's feelings for McPherson made it uncomfortable to work with her. Chojnowski subsequently told McPherson that she was being transferred to the 33rd ward. McPherson was unhappy with this transfer as her commute to the 33rd ward took at least an hour and a half, so Chojnowski reassigned her to the 2nd ward, which was twenty minutes away from McPherson's home. McPherson reported to the 2nd ward for work but injured her wrist after one day on the job. She went on disability leave from January of 2005 to August of 2005. In November of 2005, the City promoted McPherson to the position of laborer.

The parties also disagree as to whether Sadzak was authorized to discipline the hand laborers. For example, McPherson testified that when Sadzak was displeased with her, he placed her on a route by herself. He also threatened to have McPherson transferred or fired when she responded negatively to his sexual comments.

Additionally, McPherson notes that Sadzak issued verbal warnings – the first step in the City's progressive discipline procedure – by himself. On the other hand, Chojnowski contends that Sadzak could only discipline hand laborers or issue verbal reprimands at Chojnowski's direction.

### 5. McPherson's Complaints

McPherson formally complained about Sadzak's behavior to Chojnowski in January of 2005. She contends, however, that the City knew or should have known about Sadzak's harassment far earlier than this. First, she states that she complained about Sadzak to John Drosos (the 10th Ward superintendent) in the presence of superintendent Ron Wonsley. Drosos, however, did not spring into action. Instead, he merely told her that Sadzak "had a problem" and neither Drosos nor Wonsley contacted the City's Sexual Harassment office to report Sadzak. Drosos denies that he knew about the harassment and that McPherson complained to him.

McPherson and Booker also claim that Joe Rodish (the 10th Ward acting refuse coordinator), Drosos, and senior laborer Grasz personally saw Sadzak harass McPherson by pulling down his pants, making sexual comments, and gesturing for McPherson to give him a kiss. In addition, one of McPherson's co-workers, hand laborer Demetrius Walker, testified that he told Zurawski and Grasz about Sadzak's behavior toward McPherson, but Zurawski and Grasz failed to report it. Grasz denies that he ever saw or was told about Sadzak's behavior.

McPherson also contends that she complained to Chojnowski, who told her, "[t]his man [Sadzak] is crazy. He is sick. Don't pay him attention." McPherson Dep. at 55. Chojnowski, however, contends that he was unaware of the harassment and that McPherson never complained about it to him.

The parties agree that McPherson formally complained in January of 2005 by reporting him to Chojnowski. On January 27, 2005 McPherson's complaint was referred to the City's Sexual Harassment Office ("SHO"). The SHO investigated and concluded that Sadzak had violated the City's sexual harassment policy. The SHO recommended that Sadzak be discharged, and Sadzak resigned in October of 2005.

McPherson filed a charge of discrimination against the City with the Equal Employment Opportunity Commission in June of 2005. After receiving a right to sue letter, she filed suit against the City. She contends that the City: (1) is liable for undisputed sexual harassment by her former crew chief, Thomas Sadzak (Count I); (2) retaliated against her after she complained about Sadzak's sexual advances (Count II); and (3) negligently supervised and retained Sadzak and thus created a situation where the harassment could continue for five years (Count III).

## III. Discussion

### A. Standard for Summary Judgment

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Moreover, a court should grant a motion for summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party. *Valenti v. Qualex, Inc.*, 970 F.2d at 365; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.

Thus, in order to withstand a motion for summary judgment, the nonmoving party must show that a dispute about a genuine material fact exists; that is, the evidence is such that a reasonable jury could render a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. The nonmoving party may not merely rest upon the allegations or details in his pleading, but instead, must set forth specific facts showing that there is a genuine issue for trial. *See id.*; *Celotex Corp. v. Catrett*, 477 U.S. at 322.

The determination as to what facts are "material" in employment discrimination cases depends upon the substantive law of employment discrimination, and the burden of proof applicable under the law. *Williams v. Williams Electronics, Inc.*, 856 F.2d 920, 922 (1988). When considering motions for summary judgment in discrimination cases, the court applies these criteria with added rigor because the matters of intent and credibility are crucial issues. *See Sarsha v. Sears*, *Roebuck, & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993).

**B.  Title VII**

    **1.  Hostile Work Environment**

McPherson contends that the City is liable under Title VII because Sadzak's harassment created a hostile work environment. In order to recover under this theory, she must show that: (1) she was subjected to unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (2) the conduct was directed at her because of her sex; (3) the conduct had the effect of unreasonably interfering with her work performance in creating an intimidating, hostile or offensive working environment that seriously affected her psychological well-being; and (4) there is a basis for employer liability. *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998).

The parties agree that McPherson has established the first three elements of a hostile work environment claim but dispute whether there is a basis for employer liability because they disagree as to whether Sadzak was McPherson's supervisor. An employer is strictly liable for sexual harassment of an employee by a supervisor. *Rhodes v. Ill. Dep't. Transp.,* 359 F.3d 498, 505-06 (7th Cir. 2004). A harasser is a supervisor if he has the authority to affect the terms and conditions of a subordinate's employment by hiring, firing, demoting, promoting, transferring, or disciplining the subordinate. *Hall v. Bodine Elec. Co.,* 276 F.3d 345, 355 (7th Cir. 2002). The

authority to oversee aspects of another employee's job performance, however, does not mean that the harasser is necessarily a supervisor for purposes of a Title VII claim. *See Velez v. City of Chicago*, 442 F.3d 1043, 1047 (7th Cir. 2006).

Here, the parties have each pointed to evidence supporting their position. For example, McPherson asserts that Sadzak issued verbal warnings to laborers and had the power to isolate a worker from the group by sending that employee out on a route by herself. On the other hand, the City contends that Sadzak could not issue any discipline without Chojnowski's approval.

McPherson also asserts that Chojnowski was Sadzak's "cat's paw" because Sadzak could get employees transferred or fired by simply asking Chojnowski to take these actions. *See Brewer v. Bd. Of Trustees of Univ. of Ill.*, 479 F.3d 908, 917 (7th Cir. 2007) (strict liability applies where the harasser is influential enough to be the true functional decision-maker). McPherson contends that Chojnowski transferred her and Nina Booker at Sadzak's request, while the City contends that Sadzak had no authority or influence in these decisions and that Chojnowski transferred Booker at her request. Moreover, Chojnowski concedes that he transferred McPherson to the 33rd ward – an especially inconvenient, distant ward selected by Sadzak – at Sadzak's request.

In addition, the record shows that Sadzak signed premise sheets and work activity sheets on the line labeled "Supervisor." On the other hand, Sadzak was required to report rule violations to Chojnowski, who decided what disciplinary steps were appropriate. Evidence also shows that Sadzak told laborers that he was a supervisor and threatened to rape or fire them if they complained about the sexual harassment, threatened to have McPherson transferred or fired when she responded negatively to his sexual comments, and told Booker that he could get her fired by simply telling Chojnowski to do so.

-13-

In sum, the record contains numerous issues of disputed material fact. The court cannot make credibility determinations at the summary judgment stage, but this is what is required to determine if Sadzak was a supervisor or merely had the authority to oversee limited aspects of McPherson's job performance. Thus, the parties' cross motions for summary judgment are denied.

## 2. Co-worker Harassment

The City contends that if the court accepts its contention that Sadzak was McPherson's co-worker, as opposed to her supervisor, there is no basis for imposing employer liability. Despite the existence of a fact question as to this issue, the court will address this argument in the interests of completeness. The City correctly notes that it may raise an affirmative defense to a claim of harassment under Title VII by showing that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior" and "that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

This means that when a plaintiff claims that a co-worker harassed her, an employer can be liable only if it was negligent either in discovering or remedying the harassment. *Cerros v. Steel Technologies, Inc.*, 398 F.3d 944, 952-53 (7th Cir. 2005). An employer satisfies its legal duty in co-worker harassment cases if it takes reasonable steps to discover and address incidences of co-worker harassment. *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998). Moreover, notice or knowledge by the employer of harassment is a prerequisite for liability. *Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1035 (7th Cir. 1998). Thus, "a plaintiff cannot withstand summary judgment without presenting evidence

that she gave the employer enough information to make a reasonable employer think there was some probability that she was being sexually harassed." *Zimmerman v. Cook County Sheriff's Dept.*, 96 F.3d 1017, 1018 (7th Cir. 1996).

To put her employer on notice, an employee must make a reasonable effort to report the harassment to someone who can do something about it. *See Bright v. Hill's Pet Nutrition, Inc.*, 510 F.3d 766, 770 (7th Cir. 2007); *Young v. Bayer Corp.*, 123 F.3d 672, 675 (7th Cir. 1997) (considering whether the plaintiff reported the alleged harassment to someone with the authority to address it or at least "to someone who could reasonably be expected to refer the complaint up the ladder to the employee authorized to act on it"). Alternatively, an employer may be placed on notice if individuals other than the victim complain. *See McDonnell v. Cisneros*, 84 F.3d 256, 260-61 (7th Cir. 1996).

In this case, it is undisputed that the City had a policy against violence and sexual harassment in the workplace and that McPherson officially reported the sexual harassment to the City in January of 2005, years after it started. McPherson contends that the City was nevertheless on notice earlier because: (1) she reported the harassment to superiors (including Grasz, Zurawski, Drosos, and Wonley) who could reasonably be expected to refer her complaint up the ladder; (2) Grasz, Drosos, and Rodish actually witnessed the harassment; and (3) hand laborer Walker reported the harassment to Zurawski and Grasz. The City, on the other hand, disputes that any of these individuals knew about the harassment prior to McPherson's formal complaint.

McPherson also argues that the pervasiveness of the harassment supports an inference that the City knew about it, making it reasonable for her to believe that a formal report was unnecessary. *See Meritor Savings Bank v. Vinson*, 477 U.S. 57, 72 (1986); *Zimmerman v. Cook*

*County Sheriff's Dept.*, 96 F.3d 1017, 1019 (7th Cir. 1996). Specifically, McPherson alleges that at least eight other employees, including five with positions that were higher than Sadzak's, actually saw Sadzak harass her. As noted above, McPherson also contends that her fellow hand laborer, Demtrius Walker, reported Sadzak's harassment to Zurawski and Grasz and that she complained to Chojnowski, who allegedly told her, "[t]his man [Sadzak] is crazy. He is sick. Don't pay him attention." Once again, the City's witnesses all dispute McPherson's version of the facts.

Even if the court was to accept the City's contention that Sadzak was a co-worker (which it cannot based on the present record), it cannot determine if the City is shielded from liability unless it makes credibility determinations. Because it cannot do so at the summary judgment stage, summary judgment is not warranted.

    **C.**    **Retaliation**

In Count II of her complaint, McPherson contends that the City retaliated against her. In response, the City claims that it did not know about the harassment and that, in any event, McPherson did not suffer an adverse employment action. To create a prima facie case of retaliation, McPherson must show that: (1) she was engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two. *See Brown v. Ill. Dep't of Natural Res.,* 499 F.3d 675, 684 (7th Cir. 2007).

An adverse action occurs when an employee is fired or demoted, suffers a decrease in benefits or pay, or is given a significantly lesser job. *Hill v. American General Finance, Inc.*, 218 F.3d 639, 644 (7th Cir. 2000). However, not every unwelcome employment action qualifies as an adverse action as negative reviews, a change in job title, an increased distance to travel to work, or a lateral transfer do not, by themselves, qualify. *See id.*; *see also Burlington Indus. v.*

*Ellerth*, 524 U.S. at 761("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits"); *Crady v. Liberty National Bank & Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993) (a materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation).

Here, McPherson contends that her transfer to the distant 33rd Ward constitutes an adverse employment action. The first problem with this argument is that Chojnowski and McPherson's testimony as to whether Chojnowski knew about the harassment prior to the putative transfer to the 33rd Ward is wildly divergent and cannot be resolved at this point in the proceedings. Unless McPherson shows that Chojnowski knew about the harassment, his decisions about McPherson's duty station cannot be viewed as retaliatory.

The second problem is that McPherson complained about the transfer before it took place and Chojnowski immediately reassigned McPherson to a position in the 2nd Ward, which was geographically close to her home. McPherson conceded at her deposition that the transfer to the 2nd Ward was a lateral move and did not increase the inconvenience of commuting to work. She also does not contend that the position in the 2nd Ward was substantially different than her prior position. Thus, McPherson has failed to establish that the transfer to the 2nd Ward constitutes an adverse employment action. This means that the City is entitled to summary judgment on McPherson's retaliation claim (Count II).

### D. State Law Claim – Negligent Supervision and Retention

In Count III, McPherson alleges that the City is liable under a theory of negligent supervision and retention because it allowed her to be sexually harassed by retaining Sadzak as her supervisor. The court's consideration of this claim begins and ends with the statute of limitations. Under the Illinois Tort Immunity Act, "[n]o civil action . . . may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS § 10/8-101(a). McPherson was harassed between June of 2000 and January of 2005, but she filed suit in April of 2006. Thus, her state law claims are time-barred and the City is entitled to summary judgment as to these claims.

### IV. Conclusion

McPherson's motion to exceed the 80-paragraph limit in Rule 56 [Docket No. 56] is granted and her motions to strike affidavits submitted by the City [Docket No. 58] and for summary judgment as to Count I (sexual harassment) [Docket No. 60] are denied. In addition, the City's motion for summary judgment [Docket No. 66] is granted in part and denied in part. Specifically, the City's motion for summary judgment as to Count I is denied, but its motion for summary judgment as to Counts II (retaliation) and III (negligence) is granted. This matter is set for status on June 19, 2008, at 11:00 a.m. At that time, counsel should be prepared to agree on a firm trial date.

DATE: June 10, 2008

_____
Blanche M. Manning
United States District Judge